AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in the custody of the
Federal Bureau of Investigation since July 18, 2024

) ) ) ) ) ) )

~~UNDER SEAL~~

**FILED**

**JUL 1 9 2024**

~~CLERK~~, U.S. DISTRICT COURT
NORFOLK, VA

Case No.  4:24-SW- 108

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
  See Attachment A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized):*
  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC § 2251(a) | Production of Child Pornography |
| 18 USC § 2252A(a)(2) | Distribution of Child Pornography |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

REVIEWED AND APPROVED:

Peter Osyf
Assistant United States Attorney

_____
*Applicant's signature*

SA Desirae Maldonado, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 07/19/2024 _____

_____
*Judge's signature*

City and state:  Norfolk, Virginia

The Honorable Robert J. Krask, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**ITEM TO BE SEARCHED**

The following item has been seized and is in federal custody located at the Federal Bureau of Investigation, Peninsula Resident Agency, 11827 Canon Blvd., Suite 300, Newport News, Virginia 23606:

a. BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in the custody of the Federal Bureau of Investigation since July 18, 2024, (**SUBJECT DEVICE**).

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code (U.S.C.), Sections 2251 (a)an RDK and 2252A(a)(2), include the following:

a. evidence of who used, owned, or controlled the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the **SUBJECT DEVICE**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the ~~computer~~ SUBJECT DEVICE an RDK was accessed or used to determine the chronological context of ~~computer~~ SUBJECT DEVICE an RDK access, use, and events relating to crime under investigation and to the ~~computer~~ SUBJECT DEVICE an RJK user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the **SUBJECT DEVICE** of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **SUBJECT DEVICE**;

h.  evidence of the times the **SUBJECT DEVICE** were used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICE**;

j.  records of or information about Internet Protocol addresses used by the **SUBJECT DEVICE**;

k.  records of or information about the **SUBJECT DEVICE** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

l.  contextual information necessary to understand the evidence described in this attachment;

m.  records, information, and items relating to the user of the ~~computer;~~ SUBJECT DEVICE;

n.  records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

o.  records and information relating to sexual exploitation of children, including correspondence and communications between users of the web-based ~~picture~~ application, Whats App. ~~gallery.~~

2.  Child pornography and child erotica.



FILED

JUL 1 9 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in the custody of The Federal Bureau of Investigation since July 18, 2024 | Case No. 4:24-SW-_108_ |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Desirae Maldonado, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI). I have been employed by the FBI has a Special Agent since January 2019. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). That is, I am an officer of the United States, who is empowered by law to conduct investigations regarding violations of United States law, to execute warrants issued under the authority of the United States, and to make arrests of the offenses enumerated in Title 18, United States Code, Section 2251, *et. seq.* In the course of my duties, I am responsible for investigating crimes which include, but are not limited to, child exploitation and child pornography. I have previously been involved in criminal investigations concerning violations of federal laws. Since joining the FBI, your affiant has received specialized training in human trafficking investigations, identifying and seizing electronic evidence, computer forensics, recovery, and social media investigations.

2. The information set forth in this affidavit is known to me as a result of an investigation personally conducted by me and other law enforcement agents. Thus, the statements in this affidavit are based in part on information provided by Special Agents ("SAs") and other

employees of the FBI, as well as other investigators employed by federal or state governments. I have participated in investigations involving persons who collect and distribute child pornography, as defined in 18 U.S.C. § 2256(8), and the importation and distribution of materials relating to the sexual exploitation of children. I have received training in the areas of child exploitation, and I have reviewed images and videos of child pornography in a wide variety of media forms, including computer media. I have also discussed and reviewed these materials with other law enforcement officers.

3.      In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws, including various sections of Title 18, United States Code § 2251, *et. Seq*. involving child exploitation offenses.

## LOCATION

4.      This affidavit is made in support of an application for a search warrant for:

  a. The following item is located at the Federal Bureau of Investigation, Peninsula Resident Agency, 11827 Canon Blvd., Suite 300, Newport News, Virginia, 23606: BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in FBI custody since July 18, 2024, (the **SUBJECT DEVICE**). The information to be searched is described in the following paragraphs and in Attachment A.

5.      The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records.

6.      This affidavit is based upon information that I have gained from my investigation, my training and experience, as well as information obtained from other law enforcement officers. Since this affidavit is being submitted for the limited purposes of securing a search warrant, I have

2

not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities (described in Attachment B) of violation of Title 18, United States Code, Sections 2251(a) and 2252A(a)(2) are located at the above address.

7.      The purpose of this application is to seize evidence, contraband, fruits, and other items related to violations of Title 18, United States Code, Sections 2251(a) and 2252A(a)(2) relating to material involving the sexual exploitation of minors (the "Specified Federal Offense").

## LEGAL AUTHORITY

### A. PERTINENT CRIMINAL STATUTES

8.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2251(a) and 2252A(a)(2), relating to the production and distribution of child pornography.

9.      Title 18, United States Code, Section 2251(a) provides that any person who employs, uses, persuades, induces, entices, or coerces, or attempts to do so, any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign

3

commerce or mailed.

10.     Title 18, United States Code, Sections 2252A(a)(2) prohibits a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means of facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

11.     The terms "records," "documents," and "materials" include all information recorded in any form, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including, but not limited to the following:

     a.   graphic records or representations;

     b.   photographs;

     c.   pictures;

     d.   images, and

     e.   aural records or representations.

12.     The terms "records," "documents," and "materials" include all of the foregoing, in whatever form and by whatever means, the records, documents, or materials, and their drafts, or their modifications may have been created or stored, including (but not limited to): any electrical, electronic, or magnetic form (including but not limited to any information on an electronic or magnetic storage device such as hard disks).

13.     The terms "minor" and "sexually explicit conduct" are defined in 18 U.S.C. Section 2256(1) and (2). A "minor" is defined as "any person under the age of eighteen years." The term

4

"sexually explicit conduct" means actual or simulated:

  f. Sexual intercourse, including genital genital, oral genital, anal genital, or oral anal, whether between persons of the same or opposite sex;

  g. Bestiality;

  h. Masturbation;

  i. Sadistic or masochistic abuse; or

  j. Lascivious exhibition of the genitals or pubic area of any person.

14.  The term "computer" as used herein is defined pursuant to Title 18 U.S.C. Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

15.  The term "Universal Resource Locator" (URL): A URL is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies the specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

16.  The term "Internet Protocol Address" (IP Address): This term refers to the fact that every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. There are two types of IP addresses; static

5

and dynamic. A static address is permanent and never changes, such as ones used in cable modems. The dynamic address changes almost every time the computer connects to the Internet.

17.    The term "Internet Service Provider" (ISPs): This term refers to individuals who have an Internet account and an Internet-based electronic mail (e-mail) address must have a subscription, membership, or affiliation with an organization or commercial service which provides access to the Internet. A provider of Internet access and services is referred to as an Internet Service Provider or "ISP".

18.    "Web hosts" provide the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Website, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting," means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. "Co location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co location facilities offer customers a secure place to physically house the customers' hardware and equipment as opposed to keeping it in their offices or warehouse, where the potential for fire, theft or vandalism is greater.

19.    "Electronic Communication Service" refers to any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15).

20.    "Remote Computing Service" is a service that provides to the public computer storage or processing services by means of an "electronic communications system." 18 U.S.C. § 2711.

6

21.    "Electronic Communications System" means any wire, radio, electromagnetic, photo-optical, or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications. 18 U.S.C. § 2510(14).

22.    "Contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication. 18 U.S.C. § 2510(8).

23.    "Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. 18 U.S.C. § 2510(17).

24.    "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

25.    "Child Pornography," as used herein, includes the definition in Title 18, United States Code, Section 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. §§ 2252 and 2256(2).

26.    "Spam" email refers to unsolicited (usually commercial) electronic mail messages

7

sent in bulk to recipients.

27.    Cloud Computing is a model for enabling ubiquitous, convenient, on-demand network access to a shared pool of configurable computing resources that do not require end-user knowledge of the physical location and configuration of the system that delivers the services (e.g. Instead of storing files on your home computer, an alternate storage location could be a file storage service provider somewhere connected to the Internet, sometimes referred to as the "Cloud").

28.    Cloud Storage is a network of online storage where data is saved in virtual storage that is hosted by third parties. The hosting companies operate large data centers, possibly across multiple servers. Cloud storage allows users to save files and data online and access their information from anywhere using any computer that is connected to the Internet.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEM AND RELATED MEDIA

29.    Based on my training and experience, your affiant knows that searching and seizing information from computer systems often requires agents to seize all electronic storage devices to be searched later in a laboratory or other controlled environment.

30.    Computer storage devices (like hard drives, diskettes, tapes, laser disks, and thumb or flash drives) can store enormous quantities of information. For instance, a single 200-gigabyte hard-drive may contain the electronic equivalent of hundreds of thousands of pages of double-spaced text. However, unlike the search of documentary files, computers store data in files that are often not easily reviewed. Additionally, a suspect may try to conceal criminal evidence by storing files in random order and/or with deceptive file names. This may require the examiner to examine all the stored data to determine which particular files are evidence or instrumentalities of the crime. This sorting process can take weeks or months, depending on the volume of data stored.

31.    Searching computer systems for criminal evidence is a highly technical process,

8

requiring specialized skills and a properly controlled environment. The vast array of computer hardware and software available requires even computer examiners to specialize in some systems and applications, so it is difficult to know before a search which computer investigative specialist is qualified to analyze the system and its data. In any event, the investigative specialist will use certified forensic tools and data search protocols that are designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (from external sources and/or from destructive code imbedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis.

32.     An important step that is ordinarily part of an examiner's forensic examination of a computer involves attempting to create an electronic "image" of those parts of the computer that are likely to store the evidence, fruits, instrumentalities, or contraband relating to the applicable offense. Imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.

## CHARACTERISTICS OF COLLECTORS OF CHILD PORNOGRAPHY

33.     In my experience and training, and through my discussions with law enforcement officers who specialize in the investigation of child pornography, and of subjects who use the Internet and e-mail to gain access to child pornography, I have learned that individuals who use such technology are often child pornography collectors who download images and videos of child pornography. Moreover, I have learned that many subjects have saved numerous images to their hard drive, thumb drive, disks or CDs, and have kept that material for long periods of time. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are

9

certain characteristics common to individuals involved in the receipt and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, in other visual media or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, drawings, or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a

10

computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## USE OF COMPUTERS WITH CHILD PORNOGRAPHY

34. Based upon my training and information officially supplied to me by other law enforcement officers, your affiant knows the following:

35. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. They have also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The

11

distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

36. The development of computers has added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers serve four functions in connection with child pornography. These are production, communication, distribution and storage.

    a. Pornographers can now produce both still and moving images directly from a common video camera. The camera is attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred or printed directly from the computer. The captured image can be edited in very similar ways to a photograph. The image can be lightened, darkened, cropped, and manipulated in a wide variety of ways. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography. There is the added benefit to the pornographer that this method of production does not leave as large a trail for law enforcement to follow as methods that have been used in the past.

    b. Previously, child pornography collectors had to rely on personal contact, U.S. mail, and telephonic communications in order to sell, trade, or market pornography. The development of the computer has also changed that. A device known as a modem allows any computer to connect to another computer using telephone lines or other cable lines. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. These host computers are sometimes operated by commercial concerns, such as Microsoft and America Online, which allow subscribers to access their network services via connection through an Internet broadband provider or by dialing a local number and connecting via a telephone modem.

    c. These service providers allow electronic mail ("e-mail") service between subscribers and between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web; hence, they are commonly described as Internet Service Providers (ISPs). Some of these systems offer their subscribers the ability to communicate publicly or privately with each other in real time using a mode of communication called instant messaging, or

12

"IM." When logged into an IM service, users can search for other users based on the information that the other users have supplied, and they can send those users messages or initiate a chat session. Chat sessions can occur in multiple person groups, or in private one-on-one sessions. Most IM services also allow files to be transferred between users, including image files.

d. These communications structures are ideal for the child pornography collector. The open and anonymous communication allows users to locate others of similar inclination and still maintain their anonymity. Once contact has been established, it is then possible to send text messages and graphic images to other trusted child pornography collectors. Moreover, the child pornography collectors can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and anonymous as desired. All of these advantages are well known and are the foundation of transactions between child pornography collectors.

e. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography. For example, child pornography can be transferred (via electronic mail, through file transfer protocols (FTPs), or via news group postings) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services, and easy access to the Internet, the computer is a preferred method of distribution of child pornographic materials.

37. The computer's capability to store images in digital form makes it an ideal repository for pornography. A single thumb drive can store thousands of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of five hundred (500) gigabytes or 1 terabyte (TB) are not uncommon. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board and save that image to storage in another

country. Once this is done, there is no readily apparent evidence at the scene of the crime. Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

38.    Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for extended periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

**PROBABLE CAUSE**

39.    On July 17, 2024, your affiant received information from the Somerset County Prosecutor's Office (SCPO) in Somerville, New Jersey identifying ASIA TAMARA BILLUPS as

14

an individual producing and distributing multiple child pornography videos involving a toddler and an infant in Gloucester, Virginia.

40.    On July 9, 2024, SCPO approached Michael Machonis in response to a National Center for Missing and Exploited Children (NCMEC) CyberTip 191357507. CyberTip 191357507 provided information regarding digital conversations or texts that pertain to the apparent enticement of a minor for sexual purposes via Snapchat.

41.    On July 9, 2024, during a post-*Miranda* interview, Machonis initially denied possessing any sexually explicit images of children but later stated he received images of "babies" on WhatsApp from a female he met online, from a known telephone number of XXX-XXX-7835. Machonis described the images as babies naked from the waist down, exposing their penis and vagina. Machonis advised SCPO the female he received the images from was "Tamara Billups," who was 18 years old in either North Carolina or Virginia. Machonis met BILLUPS on Snapchat and later became friends with BILLUPS on Discord and Facebook.

42.    On July 9, 2024, at approximately 1155 hours, Machonis consented to a search of his silver/white iPhone 11 with a red case and password #669528. SCPO Detective Sean Fraser conducted a preview of said iPhone. SCPO Detective Fraser reviewed the WhatsApp conversation between Machonis and XXX-XXX-7835 and located numerous sexually explicit images exchanged of an African American female and of Machonis. SCPO Detective Fraser identified approximately four (4) sexually explicit videos depicting prepubescent children sent to Machonis from telephone number XXX-XXX-7835. A review of the WhatsApp conversation between Machonis and XXX-XXX-7835 also revealed a screenshot of BILLUP's Facebook account, username "Tamara Billups". The WhatsApp conversation between Machonis and BILLUPS began on approximately April 12, 2024.

15

43.    On July 10, 2024, Meta Platforms, Inc. responded to a Subpoena Duces Tecum issued on July 9, 2024, for Facebook account "Tamara Billups" or Electronic Service Provider (ESP) User ID 61553232885881. Results revealed the following information: asiatamara051@gmail.com (verified primary), asiatamara05@gmail.com (verified), date of birth: XX/XX/2005, registration date: 11/15/2023 19:57:44 UTC, and registration IP address 204.111.27.131.

44.    On July 10, 2024, Shenandoah Telecommunication Company / Shentel responded to a Subpoena Duces Tecum issued on July 10, 2024, for IP address 204.111.27.131. Results revealed the IP address returned to Gloucester High School, Gloucester County Public Schools.

45.    On July 16, 2024, TracFone Wireless responded to a Subpoena Duces Tecum issued on July 12, 2024, for telephone number XXX-XXX-7835. The following information was received: Credit Card Holder Information: ASIA BILLUPS, address: XXXX Ruth Dr., Gloucester, Virginia, phone number: XXX-XXX-7835.

46.    On July 18, 2024, your affiant reviewed the sexually explicit video files depicting child pornography. The four (4) videos are described below.

47.    On May 31, 2024, at approximately 11:19:29 PM(UTC+0), BILLUPS sent Machonis a video via WhatsApp approximately six (6) seconds in length, file name: 1evac0ff-314a-4422-b7cc-d0edab2f17dd.mp4, depicting a prepubescent male infant getting his diaper changed while an adult female exposes his penis into the camera and uses her right index finger to flick his penis multiple times. The conversation between BILLUPS and Machonis is as follows:

    a.    On or about May 31, 2024

        i.    BILLUPS: Hey
        ii.    Machonis: Sup
        iii.    BILLUPS: I haven't talked to u in a while I'm sorry

16

    iv.  BILLUPS: [Sends sexually explicit video of prepubescent male infant – 6 seconds in length]

    v.  Machonis: It's all good. I've been busy working on making a GTA FiveM RP server

    vi.  BILLUPS: Oh ok cool

    vii.  Machonis: Got any videos of the little pussy around there

    viii.  BILLUPS: Not yet. Only the vid I sent

    ix.  Machonis: Can you make some?

    x.  BILLUPS: When I can yes. Hbu. Do u have any vids

    xi.  Machonis: No vids because I don't know any minor that want to have fun

    xii.  BILLUPS: Ok

    xiii.  Machonis: It sucks especially when I'm horny and want to play

48.    On June 1, 2024, at approximately 2:12:39 AM(UTC+0), BILLUPS sent Machonis a video via WhatsApp approximately 15 seconds in length, file name: d120be2f-f3f2-4e0c-a598-577f7daa20b5.mp4, depicting a prepubescent female toddler, nude from the waist down, holding a diaper, laying on a bed with sheets depicting pink and purple unicorns and stars. The camera is focused on the toddler's bare vagina while an adult female hand is seen using her fingers to spread open the toddler's bare vagina multiple times, even after the toddler is heard saying "ow, stop" and "it hurts". The adult female is heard saying "stop, I gotta wipe you".

49.    On June 1, 2024, at approximately 2:13:27 AM(UTC+0), BILLUPS sent Machonis a video via WhatsApp approximately 21 seconds in length, file name: 95667936-0ffd-4752-8d1c-ddc83ff29326.mp4, depicting a prepubescent female toddler, nude from the waist down, laying on a bed with sheets depicting pink and purple unicorns and stars. The camera is focused on the toddler's bare vagina while the adult female spreads the toddler's vagina open multiple times and digitally penetrate the toddler's vagina. The toddler is heard saying "Ow, Asia that hurts, stop." The conversation between BILLUPS and Machonis is as follows:

    b.  On or about June 1, 2024

        i.  BILLUPS: [Sends sexually explicit video of prepubescent female toddler – 15 seconds in length]

17

ii. BILLUPS: [Sends sexually explicit video of prepubescent female toddler – 21 seconds in length]
iii. Machonis: Love how she was fighting you that's hot
iv. BILLUPS: Glad u like it
v. Machonis: I would force myself on here
vi. BILLUPS: Mmm
vii. BILLUPS: Would love that
viii. Machonis: I wished she would let you either finger her or lick her
ix. BILLUPS: I did both but forgot to record it
x. Machonis: Wished they would let you do that again and film it
xi. BILLUPS: Parents don't know. This isn't the same au t
xii. Machonis: Oh even more hot
xiii. BILLUPS: Yea. I wish u were here
xiv. Machonis: What would we do if I was there
xv. BILLUPS: Rape, and use her thoroughly
xvi. Machonis: Hot

50.	On June 1, 2024, at approximately 8:59:23 PM(UTC+0), BILLUPS sent Machonis a video via WhatsApp approximately one (1) minute and one (1) second in length, file name: b510ca82-65d0-41a9-b057-6608162d748e.mp4 depicting a prepubescent male infant, nude from the waist down, laying on a beige colored sheet. An adult female is seen fondling the infant's bare penis with her hands. The adult female's face is seen in the video performing oral sex on the infant's penis. The adult female then continues to fondle the infant's penis and digitally penetrates the infant's anus. The adult female depicts a light skinned, African American female resembling BILLUPS.

51.	Through investigative means, open-source research, and the information received in the investigation, SCPO identified "Tamara Billups" as ASIA TAMARA BILLUPS (DOB: XX/XX/2005) residing at XXXX Ruth Drive Gloucester, Virginia 23061.

52.	On July 18, 2024, a federal search warrant was issued in the Eastern District of Virginia for the residence located at XXXX Ruth Drive, Gloucester, Virginia and was executed the same day.

53.	On July 18, 2024, a federal complaint and arrest warrant was issued in the Eastern

18

District of Virginia for ASIA TAMARA BILLUPS. On the same day, the federal arrest warrant was executed for the arrest of ASIA TAMARA BILLUPS and BILLUPS was taken into federal custody. A BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in FBI custody since *Pursuant to the executed warrant for her arrest* July 18, 2024, (the **SUBJECT DEVICE**), was seized and taken ^*from BILLUPS and placed* into federal custody and stored at the FBI Peninsula Resident Agency in Newport News, Virginia.

## CONCLUSION

54.     Based on the facts set forth above, your affiant believes probable cause exists that the user of the BLACK SAMSUNG CELL PHONE MODEL SM-S546VL(GP), in FBI custody since July 18, 2024, (the **SUBJECT DEVICE**), violated Title 18, United States Code, Sections 2251(a) (production of child pornography) and 2252A(a)(2) (distribution of child pornography).

55.     I further submit that probable cause exists to believe that evidence, fruits, and instrumentalities (more precisely described in Attachment B) of such violations will be found within the **SUBJECT DEVICE**, currently located at the FBI Peninsula Resident Agency in Newport News, Virginia (more precisely described in Attachment A).

56.    Accordingly, your affiant requests that a search warrant be issued authorizing FBI agents, representatives of the FBI, with assistance from representatives of other law enforcement agencies as required, to search the **SUBJECT DEVICE** (more precisely described in Attachment A), for evidence, fruits, and instrumentalities (more precisely described in Attachment B) of the offenses described in paragraphs 8-10 of this affidavit.

FURTHER AFFIANT SAYETH NOT.

_____

Desirae Maldonado
Special Agent
FBI Child Exploitation Task Force
Federal Bureau of Investigation

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Peter Osyf.

Reviewed: _____
          Peter Osyf
          Assistant United States Attorney

Subscribed and sworn before me this **19th** day of July 2024, in the City of Norfolk, Virginia.

_____

The Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

20